OPINION
{¶ 1} Defendant-appellant, William Brooks Meador, appeals his convictions and sentence in the Warren County Court of Common Pleas for two counts of rape.
 {¶ 2} On July 27, 2007, appellant was indicted on three counts of rape in violation of R.C. 2907.02(A)(1)(b), one count of sexual imposition in violation of R.C. 2907.06(A)(4), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) based upon allegations of inappropriate sexual contact with two minors.
 {¶ 3} In 2003, appellant began dating the victim's mother and, shortly thereafter, *Page 2 
the couple began cohabitating together. The mother had two minor daughters from her previous marriage; the victim, J.R., and her sister, B.R., who also moved into the residence. The couple became engaged and had a child of their own. The victim testified that, beginning when she was six years of age, appellant would enter her room at night and touch her vagina with his fingers. He would sometimes use his fingernails to rub it, causing pain. In fact, the victim claimed that the touching would occasionally cause her genitals to hurt the following day when she went to the bathroom. When asked at trial whether appellant's fingers were inside her vagina, the victim responded, "No, I couldn't tell, but it kind of felt like it." The victim stated that the touching occurred more times than she could count from the time she was in the first grade until she was in the third grade, when appellant moved out of the house. The victim's cousin, O.T., also alleged that appellant improperly touched her.[1]
 {¶ 4} Children's Services was contacted by a friend of J.R.'s mother, Trinity C. Following an inquiry into the allegations, appellant was charged with three counts of rape based upon the alleged sexual touching of J.R. Each count of the indictment covered a different period of time when the conduct was alleged to occur. Specifically, count one alleged that appellant raped J.R. between the dates of March through December 2005, when she was six years of age. Count two alleged that appellant raped her when she was seven years of age, between the dates of December 2005 and December 2006, and count three alleged that appellant raped the victim when she was eight years of age, between December 2006 and March 2007. Appellant also was charged with a single count of sexual imposition and a count of gross sexual imposition for the improper conduct with O.T. *Page 3 
 {¶ 5} Upon motion by appellant's trial counsel, the lower court severed the rape charges from the sexual imposition charges into separate trials due to the potential prejudice that may result from the testimony of two sex offense victims. However, following a motion in limine filed by appellant, the trial court held that O.T. could testify at the trial on the rape charges to establish a time frame of when the incident was reported. The court stated that O.T. and other witnesses at trial could testify that an "incident" occurred between O.T. and appellant "to establish a time frame of events." Following a jury trial, appellant was found guilty of rape in the first and second counts and sentenced to two consecutive terms of life in prison. Appellant then entered a plea of no contest to the sexual imposition charge in exchange for dismissal of the gross sexual imposition charge. Appellant's appeal relates only to the rape trial, where he raises six assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO DISMISS THE INDICTMENT FOR FAILURE OF THE STATE TO PROVIDE MORE SPECIFIC DATES AS TO WHEN THE APPELLANT'S CRIMINAL CONDUCT MAY HAVE OCCURRED."
 {¶ 8} In his first assignment of error, appellant argues the trial court erred by refusing to dismiss the indictment due to the open-ended time frame provided for each count. Specifically, appellant argues the nonspecific periods of time included in the indictment violate due process because it leaves him open to additional prosecutions and deprives him of the ability to present an alibi defense. In support of his argument, appellant cites the Ohio Supreme Court's decision inState v. Sellards (1985), 17 Ohio St.3d 169, and the federal Sixth Circuit case, Valentine v. Konteh (C.A.6, 2005), 395 F.3d 626. *Page 4 
 {¶ 9} The purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident. State v.Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, ¶ 7. "An indictment meets constitutional requirements if it `first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"State v. Childs, 88 Ohio St.3d 558, 564-565, 2000-Ohio-425, quotingHamling v. United States (1974), 418 U.S. 87, 117-118, 94 S.Ct. 2887.
 {¶ 10} After review of the indictment and relevant case law, we find no violation of due process. The defendant in Valentine was indicted on 20 counts of rape and 20 counts of felonious sexual penetration. Id. at 628. Each count was identically worded with no differentiation among the separate charges. Id. Specifically, each rape count alleged that between March 1, 1995 and January 16, 1996, Valentine unlawfully engaged in sexual conduct with his stepdaughter, being under the age of 13 years. Id. at 629. Similarly, each felonious sexual penetration count alleged that between March 1, 1995 and January 16, 1996, Valentine unlawfully inserted his finger into the vaginal or anal cavity of his stepdaughter. The defendant presented a similar argument to the case at bar, arguing that the "wide date range" prevented him from mounting a proper defense. The Sixth Circuit rejected this argument, noting that "large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." Id. at 632. "It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity." Id., citing State v.Daniel (1994), Ohio App.3d 548, 556. *Page 5 
 {¶ 11} Rather, the due process violation identified inValentine resulted from the use of multiple, identically worded counts of sexual abuse with no specificity regarding the factual offenses allegedly committed. Id. at 632 and 635. "Valentine was prosecuted and convicted for a generic pattern of abuse rather than for forty separate abusive incidents." Id. at 634. "The trial court acknowledged that the jury would either convict Valentine on all forty counts or acquit him of all forty counts." Id.
 {¶ 12} The indictment in this case, however, delineated the factual bases for the separate incidents, identifying three separate time periods for each count. Id. at 634. Moreover, the jury could clearly differentiate between the incidents, and did so, as evidenced by appellant's acquittal on the third count of rape. Id. at 636.
 {¶ 13} In Sellards, the defendant was charged with three counts of rape and four counts of importuning relating to his involvement with three minor boys. 17 Ohio St.3d at 169. The counts alleged appellant committed the offenses between April 1, 1982 and May 31, 1982; July 1, 1982 and July 31, 1982; and August 1, 1982 and August 31, 1982. Id. However, at trial the victims "testified to dates that were more specific than those which were stated in the indictment and bill of particulars." Id. The Ohio Supreme Court held that "[i]n a criminal prosecution the state must, in response to a request for a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information." Id. at syllabus. The court also noted that "where the inability to produce a specific time or date when the criminal conduct occurred is, as would be the more typical case, without material detriment to the preparation of a defense, the omission is without prejudice, and without constitutional consequence." Id. at 172. The court noted that Sellards never filed a notice of intent to rely on an alibi. Id. However, the court found constitutional implications because the prosecution learned of a more precise date of the alleged incident from the victim the *Page 6 
day before trial and failed to disclose the information to Sellards. Id. at 173.
 {¶ 14} Like Sellards, appellant in this case also never claimed an alibi defense. Instead, he claimed the conduct never occurred. Further, there is no indication that the prosecution was aware of a more specific date of the alleged incidents, nor did the victim supply more specific dates during her trial testimony. Rather, the victim's testimony was presented in the same time period and manner as alleged in the indictment. Accordingly, we find no violation of Sellards orValentine.
 {¶ 15} Appellant's first assignment of error is overruled.
 {¶ 16} Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED THE STATE TO QUESTION O.T., J.R.'S COUSIN, REGARDING ANY INCIDENTS BETWEEN O.T. AND DEFENDANT-APPELLANT."
 {¶ 18} In his second assignment of error, appellant argues the trial court erred by allowing O.T. and other witnesses to refer to the "incident" during the trial on the rape charges. Appellant argues he was prejudiced because the jury could conclude from the trial testimony that appellant committed a separate criminal sexual offense against O.T.
 Trial Court Proceedings {¶ 19} The trial court in this case sustained appellant's motion in limine to the extent that it found that a single proceeding on all charges with both victims would prejudice appellant and that admission of evidence relating to the sexual conduct between appellant and O.T. would be improper. Instead, the court attempted to limit the testimony of O.T., and other witnesses, only allowing them to refer to an "incident" occurring with O.T. *Page 7 
1. Trial Court's Ruling on Motion in Limine {¶ 20} In ruling on appellant's motion in limine, the trial court acknowledged that the "State's proffered reason for calling this witness is to try and establish a time frame" of when the incident was reported. "If [O.T.] merely says there was an incident[,] * * * an incident could mean as little as we got into an argument or somebody tried to discipline me and I disapproved. I don't think we can jump to the conclusion that this jury is going to automatically infer that there was something of a sexual nature that occurred."
 {¶ 21} As a result, the trial court directed the prosecution "not to question [O.T.] about the touching that was unwanted," "instruct the witnesses not to volunteer" any information relating to the conduct between appellant and O.T. and "be sure that they answer only the questions that are put to them."
 {¶ 22} Despite this instruction, the following statements and testimony were elicited at trial.
2. Prosecution's Opening Statement {¶ 23} During opening argument, the prosecution stated, "[f]inally, something happens between [O.T.], which is [J.R.]'s older cousin, she's about thirteen years old. And, we're not going to go into the details of what happened, but because of that incident that happened between [O.T.] and William Meador, [O.T.] became concerned for [J.R.] and [J.R.'s sister] and at the time, Mr. Meador was not living in the home with [J.R.] and her mom and sister and brother, he was out of the home. When [O.T.] found out that he was going to be moving back into the house, again, she decided now is the time, I need to do something and she told [J.R.]'s mom, about what happened between her and William Meador, between [O.T.] and William Meador. [O.T.] didn't know anything that was going on with [J.R.] at the time, but she was concerned." *Page 8 
3. Testimony of O.T. {¶ 24} During direct examination of O.T., the prosecution asked, "Now, [O.T.], we're not going to talk about anything specific that happened, but was there an incident that happened between you and Brooks Meador?"
 {¶ 25} "A: Yes."
 {¶ 26} Later, the prosecution asked, "Now, as a result of the incident that occurred between you and Mr. Meador, what did you do, initially?"
 {¶ 27} "A: Like what do you mean?
 {¶ 28} "Q: Did you report anything to anybody?
 {¶ 29} "A: Not at first, no.
 {¶ 30} "Q: Did you have any concerns?
 {¶ 31} "A: Yes.
 {¶ 32} "Q: And, what were your concerns?
 {¶ 33} "A: That something would be happening to [J.R.] and [B.R.] * * *
 {¶ 34} "Q: Now, at some point, did you decide to go to [J.R.'s mother] and tell her what happened?
 {¶ 35} "A: Yeah.
 {¶ 36} "Q: And, why did you decide to go tell [J.R.'s mother]?
 {¶ 37} "A: Because I heard that they were breaking up and then she told me that he was thinking about getting back together with her and I thought that would be a chance to stop it. * * *
 {¶ 38} "Q: And, your aunt told you I am thinking of getting back together with Brooks?
 {¶ 39} "A: Yes.
 {¶ 40} "Q: And, that was the point where you said I need to tell her? *Page 9 
 {¶ 41} "A: Yes.
 {¶ 42} "Q: Okay. And, without saying what you told her, did you tell her what happened?
 {¶ 43} "A: Yes, I did.
 {¶ 44} "Q: Okay. At the time that you told your aunt what happened between you and Brooks, were you aware of anything that had happened possibly between him and [J.R.]?
 {¶ 45} "A: No.
 {¶ 46} "Q: Okay. Now, since that time, have you become aware of something that occurred?
 {¶ 47} "A: Yes.
 {¶ 48} "Q: Did you become aware of that because of you telling your aunt?
 {¶ 49} "A: Yes.
 {¶ 50} "Q: That kind of brought it all out in the open?
 {¶ 51} "A: Yes. 4. Testimony of Trinity C.
 {¶ 52} Trinity C. is a friend of J.R.'s mother who reported the allegations to children's services following a phone conversation with J.R.'s mother. During the conversation, J.R.'s mother confronted appellant about the sexual conduct with the girls.
 {¶ 53} At trial, the prosecution inquired about the events during the phone conversation. Trinity C. responded, "[s]he said that she needed to talk to him about something that happened — something that happened with the girls in the family * * *. [S]he told him it wasn't necessarily the two girls there in the house."
 {¶ 54} On cross-examination, appellant's counsel asked when the phone call occurred. However, Trinity C. volunteered, "I don't remember which month it was, but it *Page 10 
was after [O.T.] and [J.R.] said what happened, it was right after that."
5. Testimony of J.R.'s Mother {¶ 55} Appellant's counsel called J.R.'s mother as a witness. On cross-examination, the prosecutor asked, "Okay, Fast forward, do you recall the month that [O.T.] came and told you what had happened between her and Brooks?"
 {¶ 56} Thereafter, the prosecutor inquired, "And, during that conversation was your friend Trinity on the telephone, kind of overhearing what was happening?"
 {¶ 57} "A: Yes.
 {¶ 58} "Q: And, what did you say to Brooks?
 {¶ 59} "A: I basically just asked him why there were two kids that you know, I never gave any names, I just said why are there two kids that are telling me the exact same story you know about you touching them inappropriately?"
 Analysis
1. Standard of Review
 {¶ 60} In order to preserve appellate review of a motion in limine, a party must also challenge the evidence during trial when presented in its full context. State v. Maurer (1984), 15 Ohio St.3d 239, 259. Appellant's trial counsel failed to object to the all of above testimony during trial. Due to the failure to object, appellant has waived all but plain error. Id.
 {¶ 61} "Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding." State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. State v. Hancock, 108 Ohio St.3d 57, 67,2006-Ohio-160. *Page 11 
2. Error {¶ 62} The first step in a plain error analysis is to determine whether an error occurred. Appellant's assignment of error implicates Evid. R. 403(A), Evid. R. 404(B), and the rape shield law as set forth in R.C. 2907.02.
 {¶ 63} Evid. R. 404(B) provides, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 64} Similarly, Ohio's rape shield law, provides "[e]vidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." R.C. 2907.02(D).
 {¶ 65} Like Evid. R. 404(B), R.C. 2945.59 allows the admission of other acts evidence to prove "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question."
 {¶ 66} However, even if "other bad acts evidence" might be admissible under the rape shield law, it must still satisfy the test set forth in Evid. R. 403(A), namely, that "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of *Page 12 
misleading the jury." State v. Zuern (1987), 32 Ohio St.3d 56, 59.
 {¶ 67} In State v. Schaim, 65 Ohio St.3d 51, 1992-Ohio-31, the Ohio Supreme Court recognized the limited admissibility of "other acts" evidence in sex offense cases. "The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The forcible rape statute and the gross sexual imposition statute both contain subsections that address the admissibility of evidence of other sexual activity by either the victim or the defendant." Id. at 59.
 {¶ 68} "[E]vidence of other acts of a defendant is admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question." State v. Curry (1975), 43 Ohio St.2d 66, 69. Specifically, "other acts" evidence can only be offered to prove the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. See, also, State v. Price (1992), 80 Ohio App.3d 35,40-41.
 {¶ 69} After reviewing the testimony and statements elicited at trial, a jury could easily conclude that the "incident" was a separate sexual offense, not merely an "argument" or an act of "discipline" as denoted by the trial court. Specifically, O.T. testified that, based upon the "incident" between her and appellant, she was concerned about J.R. and J.R.'s sister. Moreover, she acknowledged that she became aware of "what was happening" to J.R. after talking to J.R.'s mother.
 {¶ 70} Further, Trinity C. testified that during the phone conversation J.R.'s mother confronted appellant about "something that happened with the girls in the family" and also acknowledged that "it wasn't necessarily the two girls" in the home. Later, *Page 13 
Trinity C. specifically identified O.T. as the other affected individual. Finally, J.R.'s mother testified that "two kids that are telling me the exact same story you know about you touching them inappropriately."
 {¶ 71} One statement alone may be innocuous, but the cumulative effect of the statements elicited by the prosecution demonstrates that appellant committed a separate sexual act against O.T. Clearly, based upon this evidence, the jury could infer that appellant committed a separate sex offense, and that the separate sex offense was committed against O.T.
 {¶ 72} The state's proffered reason for admission of the testimony relating to the "incident" was to merely establish a time frame as to when conduct was reported by O.T. to J.R.'s mother. The trial court adopted this reasoning in allowing the limited testimony. However, in sex offense cases, "other acts" evidence may only be admitted for a reason enumerated in the rape shield provision of the Revised Code.Curry at 69.[2] Establishment of a time frame is not a designated purpose under the rape shield law, nor did the trial court provide a limiting instruction to the jury.
 {¶ 73} Moreover, before trial, the court acknowledged the potential prejudice that could result by allowing testimony relating to the sexual conduct with O.T., and *Page 14 
attempted to limit the testimony accordingly. As much as the court attempted to limit the testimony relating to separate sexual conduct, the record clearly demonstrates that the jury could have easily inferred that appellant committed a separate sexual offense against O.T.; the exact consequence the trial court wished to prevent.
 {¶ 74} Despite the state's proffered reason for the testimony, the questions posed by the state to the witnesses regarding the "incident" were not confined to matters of timing. As provided above, the state sought further details surrounding the reporting of the incident by O.T. Specifically, the prosecution asked O.T. why she reported the "incident" to J.R.'s mother and what were O.T.'s concerns based upon this "incident." Similarly, the prosecution did not merely ask Trinity C. when the phone call occurred. Rather, the prosecution inquired what J.R.'s mother said to appellant and the details of the conversation. Finally, on cross-examination of J.R.'s mother, the prosecution asked what she said to appellant during their conversation, which revealed that two children claimed appellant inappropriately touched them.
 {¶ 75} Clearly, it was error to allow this testimony as it was not offered for an enumerated purpose and, despite the trial court's precautions, prejudicial "other acts" evidence was elicited at trial. Further, even assuming that these remarks would be admissible under the rape shield statute or Evid. R. 404(B), the testimony was also so unfairly prejudicial that exclusion would be necessary under Evid. R. 403(A). Particularly, testimony suggesting improper sexual conduct between O.T. and appellant was not isolated. As discussed above, multiple witnesses at trial alluded to appellant's victimization of O.T. Due to the pervasiveness of the improper references during trial, the danger of unfair prejudice to appellant substantially outweighs the limited probative value during appellant's trial for the rape charges.
3. "But for" Test *Page 15 {¶ 76} Having found error, the second step in the plain error analysis is whether "but for the error, the outcome of the trial would have been different." State v. Hancock, 108 Ohio St.3d 57, 67. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.State v. Long (1978), 53 Ohio St.2d 91, 95. It is rare for a court to find plain error; however, it is warranted in this case.
 {¶ 77} Absent the statements provided by O.T., J.R.'s mother, and Trinity C, this case basically presents the testimony of J.R. against that of appellant, as no physical evidence exists of the improper sexual conduct. Appellant claims that the conduct never occurred.
 {¶ 78} Despite the precautions by the trial court, the testimony went beyond the bounds of merely referring to an "incident." As discussed above, it is clear that evidence of another sexual act against O.T. was improperly admitted at trial. "The admissibility of other acts evidence is carefully limited [in prosecutions of sex offenses] because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." Schaim at 59.
 {¶ 79} This is especially true in cases, such as the one at bar, involving "he said, she said" situations where credibility is the primary factor in determining guilt. Id. In addition to the prejudice suffered by admitting evidence of "other bad acts," the testimony of a second victim can bolster the credibility of the subject victim in a case. It is for these exact reasons that the rape shield law, Evid. R. 404(B), and Evid. R. 403(A) were created. Id.
 {¶ 80} This is a very close case regarding the existence of plain error. In State v. *Page 16 Shaw, Montgomery App. No. 21880, 2008-Ohio-1317, the Second Appellate District faced a similar situation to the case at bar. Shaw was indicted for 15 counts of rape and ten counts of sexual battery relating to the sexual abuse of three of his minor daughters. Id. at ¶ 3. At trial, Shaw's three other, older daughters testified about the sexual abuse they endured, which was not the subject matter of the pending case. Id. at ¶ 4. Following trial, Shaw was only found guilty of three counts of rape and two counts of sexual battery. Id. at ¶ 6.
 {¶ 81} In reviewing the admission of the "other acts" testimony from Shaw's three older daughters, the Second District noted the prosecution's cursory explanation for the testimony. "[T]he prosecutor merely stated that she needed to talk to the witnesses `about what happened during these times so I can move on to what the next incident will be. There are so many incidents.'" The Second District rejected the state's proffered reason stating, "[t]his cursory explanation fails to establish any of the exceptions under Evid. R. 404(B)." Id. at ¶ 12.
 {¶ 82} "The courts in Ohio have long recognized that evidence of other crimes, wrongs or bad acts carries potential for the must virulent kind of prejudice for the accused." Id. at ¶ 13. "That is even more true [sic] in a case such as this where the other acts involve conduct similar or identical to the offense charged. In cases where evidence has been admitted for a very limited purpose and that evidence tends to show that Defendant has committed other criminal acts, the jury should be instructed that such evidence must not be considered by them as proof that defendant committed the crime charged." Id., citing State v.Flonnory (1972), 31 Ohio St.2d 124. "The limiting instruction should be given at the time the `other acts' evidence is received, and it has been held that the failure to give any limiting instruction constitutes plainerror." Id., citing State v. Crafton (1968), 15 Ohio App.2d 260;State v. Tisdale, Montgomery App. *Page 17 
No. 19346, 2003-Ohio-4209, ¶ 47; and State v. Baxter (1914),91 Ohio St. 167, syllabus.
 {¶ 83} The Shaw court ruled that "no justification exists for the extensive amounts of `other acts' testimony * * * the pervasive nature of the testimony precluded Shaw's right to a fair trial. It is also significant that the trial court gave no limiting instruction regarding the `other acts' testimony, either at the time the testimony was offered or in the jury instructions at the close of the trial. Given the state's failure to articulate a proper justification for the `other acts' evidence in this case, compounded by the extensive amount of this testimony and the trial court's failure to give a limiting instruction regarding that evidence, we find that Shaw's right to a fair trial was prejudiced." Id. at ¶ 14-15.
 {¶ 84} Similar to the case at bar, the Shaw court found prejudice based upon the improper admittance of "other acts" evidence of the defendant's sexual conduct. Although the trial court had no affirmative obligation to provide a remedial instruction, the Second District used the omission as a factor in determining prejudice. The same consideration applies to this matter, as the trial court also failed to provide a curative instruction.[3] Moreover, like Shaw, the state's articulated reason for admission of the testimony did not meet the criteria of the rape shield law. Further, the limited probative value the state sought for admission of the testimony was clearly outweighed by the potential prejudice to appellant. Additionally, the conduct between appellant and J.R. was similar to the allegations supplied by O.T., as both girls alleged improper sexual touching. Absent the testimony of O.T., Trinity and J.R.'s mother, the case amounted entirely to appellant's claims versus J.R.'s testimony. J.R.'s version of the events was not overwhelming and was potentially bolstered by the other allegations of sexual *Page 18 
conduct. Like Shaw, the jury in this case found appellant guilty of the two remaining counts, but rejected the third charge against appellant. Due to the pervasive nature of the "other acts" testimony in this case, we conclude that "but for" that testimony, the outcome of appellant's trial would have been different.
 {¶ 85} Appellant's second assignment of error is sustained.
 {¶ 86} Assignment of Error No. 5:
 {¶ 87} "DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 88} In his fifth assignment of error, appellant raises ineffective assistance of counsel. Similar to his second assignment of error, appellant contends that counsel was ineffective for failing to object to the prejudicial "other acts" testimony or to request a limiting instruction.
 {¶ 89} To establish ineffective assistance, appellant must show that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v. Washington
(1984), 466 U.S. 668, 687-88, 693, 104 S.Ct. 2052. Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694.
 {¶ 90} As established above, an error clearly occurred by admitting testimony regarding alleged sexual contact between appellant and O.T. Appellant's trial counsel equally erred by failing to object to the specific references at trial which identified O.T. as a separate victim, especially after receiving a favorable ruling on the motion in limine.
 {¶ 91} However, like the plain error analysis, the court must also determine whether appellant was prejudiced by this testimony. A claim of ineffective assistance *Page 19 
under Strickland imposes an almost identical standard to the plain error analysis, namely, that "but for" counsel's errors by allowing admittance of the "other acts" testimony, a "reasonable probability" exists that the result of appellant's trial would have changed. Since this court found that, but for the improper admittance of the other acts testimony, the outcome of the trial would have been different, we similarly find that, but for counsel's errors in failing to object to improper testimony, a reasonable probability exists that the result of the trial would have changed. Accordingly, we find that appellant's trial counsel was ineffective.
 {¶ 92} Appellant's fifth assignment of error is sustained.
 {¶ 93} Assignment of Error No. 3:
 {¶ 94} "THE STATE'S IMPROPER FINAL ARGUMENT AND QUESTIONING DEPRIVED DEFENDANT-APPELLANT OF A FAIR TRIAL."
 {¶ 95} Assignment of Error No. 4:
 {¶ 96} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT-APPELLANT OF TWO COUNTS OF RAPE."
 {¶ 97} Assignment of Error No. 6:
 {¶ 98} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT SENTENCED HIM TO CONSECUTIVE TERMS OF LIFE IN PRISON."
 {¶ 99} Appellant's third, fourth and sixth assignments of error are overruled as moot.
 {¶ 100} Judgment reversed and remanded for new trial.
POWELL, P.J., and HENDRICKSON, J., concur.
[1] The details of the alleged improper sexual contact by appellant with O.T. are unclear from the record.
[2] {¶ a} We recognize, however, that some courts, including the Ohio Supreme Court, have recognized additional exceptions than those specifically enumerated in the rape shield law. See Child, Ohio's New Rape Law: Does it Protect Complaintant at the Expense of the Rights of the Accused (1975), 9 Akron L.Rev. 337. Most of these additional exceptions resolve in favor of the defendant based upon constitutional considerations. Specifically, the Ohio Supreme Court recognized that a defendant may introduce evidence of other instances of the victim's sexual history to show the victim's consent in a rape trial. State v.Williams (1986), 21 Ohio St.3d 33, 36. In Williams, the court held that preventing admission of such evidence is a violation of the defendant's Sixth Amendment right to confrontation. Id. Similarly, in In reMichael (1997), 119 Ohio App.3d 112, the Second Appellate District also found that the Sixth Amendment required the introduction of sexual history to prove the child victim's sexual knowledge and alternative explanation for the child's allegations. Id. at 121. See, also,State v. Hart (1996), 112 Ohio App.3d 327; State v. Pulley (Jan. 27, 1993), Loraine App. No. 92CA005418, 1993 WL 20989; State v. Ungerer
(June 5, 1996), Ashland App. No. 95COA1125, 1996 WL 362804.
{¶ b} The state in this case never argues that "establishment of a timeline" is an additional nonincluded exception to the rape shield law, nor, as provided later in this decision, does the testimony referring to the "incident" admitted in the instant matter merely prove a timeline.
[3] Even if the trial court had issued a limiting instruction in this case, the instruction alone would not have fully cured the prejudice to appellant due to the pervasiveness of the testimony referencing the improper conduct with O.T. *Page 1