[Cite as *State v. Hernandez*, 2018-Ohio-738.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104976**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ALFONSO E. HERNANDEZ

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601004-A

**BEFORE:** Kilbane, P.J., Stewart, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 1, 2018

**ATTORNEY FOR APPELLANT**

Brian R. McGraw
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Frank Romeo Zeleznikar
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Alfonso E. Hernandez ("Hernandez"), appeals his jury conviction for rape, kidnapping, and gross sexual imposition. For the reasons set forth below, we affirm.

{¶2} In December 2015, Hernandez was charged in an eight-count indictment with two counts of rape, four counts of kidnapping, and two counts of gross sexual imposition ("GSI"). Each count carried a sexually violent predator specification. The indictment alleged that Hernandez sexually assaulted two young girls: his great-niece, K.T., and her cousin, M.R.

{¶3} In May 2016, Hernandez moved to sever Counts 1 through 4 from Counts 5 through 8, effectively moving for separate trials on the allegations of each victim. The trial court denied this motion. Prior to jury selection, and again after the close of all evidence, the defense renewed its motion to sever and the trial court denied the renewed motion. The parties stipulated that Hernandez's immigration status would not be mentioned in the presence of the jury.

{¶4} The following evidence was adduced at trial.

Allegations of K.T.

{¶5} Twelve year-old K.T. described in detail two separate instances where she testified that Hernandez sexually assaulted her. K.T. testified that the first sexual assault occurred when she was about five years old. At that time, she lived with her parents in the downstairs unit of a triple house. K.T.'s grandmother and great-grandmother lived in

the second floor unit. Hernandez, as well as K.T.'s other great-uncle and his wife, J.H., lived upstairs in the third floor unit.

{¶6} K.T. explained that the first instance of sexual assault took place while she was visiting the third floor unit of the home with her mother, N.H. N.H. went into the living room to talk with J.H. Hernandez called K.T. to his room, telling her that he had something to show her. She explained that once inside Hernandez's room, Hernandez proceeded to lay her on the bed, pull down her pants and his own pants, put a condom on, and put his penis inside her vagina.

{¶7} K.T. testified that at some point, J.H. began knocking on the door, telling K.T. that her mother was waiting and wanted her to come out of the room. K.T. explained that Hernandez took off the condom and pulled up his pants and K.T.'s pants. He then gave K.T. a small toy, told her "not to tell anyone," and sent her out of the room. K.T. testified that she was confused and scared so she told Hernandez that she would not tell anyone what had happened.

{¶8} K.T. explained that the second sexual assault occurred years later when she was in the fifth grade. At that time, K.T. and her immediate family lived in a new home in the downstairs unit of a double house owned by her grandmother _ Hernandez's sister. K.T. testified that Hernandez would come to this house a few times each week to visit his mother _ K.T.'s great-grandmother _ who lived in the second-floor unit with Hernandez's sister.

**{¶9}**   K.T. testified that a few weeks before Hernandez raped her a second time, Hernandez snuck up on her while she was in the basement doing laundry.   K.T. explained that she ran upstairs and into her mother's room.   She forgot to lock the door, so Hernandez came in, tried to touch her, and asked her "why are you ignoring me?"   She testified that Hernandez forcefully pulled her pants down, whispered in her ear "don't ignore me again or I'm going to do the same thing to your [younger] sister," and then walked away.

**{¶10}** A few weeks later, K.T. went up to the second-floor.   K.T. testified that her parents were at work and her great-grandmother was in the basement of the home.   K.T. noticed that Hernandez was in one of the bedrooms.   She testified that he began to walk toward her; she tried to walk away, but he followed her into the living room.

**{¶11}**   Once in the living room, K.T. sat on the couch and covered herself with a blanket.   Hernandez took the blanket off of her and began to pull down her pants.   He then lifted her up and put her on the ground.   He unzipped his pants, put on a condom that he had retrieved from his wallet, put his penis inside her vagina, and "started thrusting for about three minutes."   K.T. testified that during this second rape she was scared and thought "it happened again, * * * I didn't want it to, and I couldn't do anything about it."

**{¶12}** K.T. explained that Hernandez stopped when he heard the kitchen door creaking, as if someone was coming in.   He took the condom off, put it in a small plastic

bag in his wallet, and put it in his back pocket.  Hernandez then left K.T. lying on the floor.

{¶13} K.T. testified that she first told her cousin, M.R., about the sexual assaults, and eventually, she also told her mother.

Allegations of M.R.

{¶14} Eleven-year-old M.R. also testified that Hernandez had sexually assaulted her on two separate occasions.  M.R. explained that K.T. is her cousin and "good friend."  Through the testimony of adults in the family it was established that  M.R. is not related to Hernandez, but their families are close.  K.T.'s father and M.R.'s mother are brother and sister, whereas Hernandez is K.T.'s maternal great-uncle.

{¶15} M.R. testified that when she was younger Hernandez's mother _ K.T.'s great-grandmother — cared for her five days a week while her parents were at work. Hernandez's mother would care for M.R. in the home Hernandez shared with his brother and his brother's family.

{¶16} M.R. testified that while in this home, she was in Hernandez's room with his nephews playing on Hernandez's computer.  M.R. testified that she was sitting on Hernandez's lap.  His nephews left the room.  M.R. testified that Hernandez pushed her against the door and began touching her breasts both over and under her shirt.  She testified that eventually Hernandez's nephews knocked on the door, so Hernandez stopped touching her and let the boys in the room.  M.R. testified that she could not remember how old she was or how long ago this happened.

**{¶17}** M.R. also testified to a second incident when she was in Hernandez's room sitting on his lap. Hernandez grabbed her hand and attempted to put her hand on his penis. M.R. testified that she told Hernandez she had to go to the bathroom. Hernandez let her go, and she ran out of his room to the bathroom. She testified that this second incident occurred when she was around five-years old.

Testimony of N.H.

**{¶18}** N.H., K.T.'s mother, testified that in November 2015, she and K.T. had an argument while preparing to go to a family picnic. N.H. had noticed that K.T. had recently been withdrawn and would not leave her bedroom. N.H. explained that K.T. did not want to go to family functions and was upset that she had to go to this particular family picnic. K.T. told N.H. that she wanted to stay home, and N.H. and K.T. began fighting. During the argument, K.T. told N.H. that Hernandez had sexually assaulted her. K.T. also told N.H. that she had confided in M.R. about the assaults. N.H. and K.T. then went to M.R.'s home. Once at M.R.'s home, M.R. confided in N.H., her aunt, that Hernandez had sexually assaulted her as well. That same day, K.T.'s father called Cleveland police to report Hernandez's sexual assaults of both K.T. and M.R.

**{¶19}** The investigating detective, Traci Hill ("Detective Hill"), testified about her investigation of the girls' allegations of sexual abuse by Hernandez.

**{¶20}** The defense called Hernandez's sister-in-law, J.H., his niece, as well as his sister _ K.T.'s grandmother. Notably, J.H. testified that she did not remember having knocked on Hernandez's bedroom door and asking K.T. to come out of his room, as K.T.

had testified.

{¶21} At the conclusion of the trial, the jury returned guilty verdicts on Counts 1 through 4 and Counts 7 and 8. The jury found Hernandez not guilty of Counts 5 and 6, which related to M.R.'s first sexual assault allegation.

{¶22} The trial court held a hearing on the sexually violent predator specifications.[1] The trial court found Hernandez not guilty on all sexually violent predator specifications and proceeded to sentence Hernandez to life in prison with parole eligibility after 25 years.

{¶23} Hernandez now appeals his convictions, raising the following assignments of error for our review:

Assignment of Error One

The court abused its discretion in denying repeated defense motions to sever, allowing the joinder [of] the individually weak [K.T.] and [M.R.] allegations [in one trial].

Assignment of Error Two

The manifest weight of the evidence was not established to allow for convictions in any of the crimes.

Assignment of Error Three

The court abused its discretion when it admitted "other acts" evidence pursuant to [Evid.R. 404(B)]; evidence of other alleged sexual acts by [Hernandez] upon [K.T.] deemed to be too weak to indict.

Assignment of Error Four

---

[1] Prior to trial, Hernandez filed a jury waiver as to the sexually violent predator specifications in each of the eight counts of the indictment.

[Hernandez] was denied a fair trial when his status as a non-citizen was hinted at by Detective Hill after motion in limine prohibiting introduction.

### Assignment of Error Five

[Hernandez] was denied a fair trial when the trial court denied [Hernandez's] attempts to review [K.T. and M.R.'s] statements through testimony of [Detective Hill].

{¶24} For ease of analysis, we address Hernandez's assignments of error out of order.

### Manifest Weight

{¶25} In the second assignment of error, Hernandez argues that his convictions are against the manifest weight of the evidence because they were "depend[ent] upon the cloudy and shaky testimony of two young girls." Hernandez contends that K.T.'s and M.R.'s testimony lacks credibility, pointing to inconsistencies in their testimony.

{¶26} The Ohio Supreme Court has addressed the standard of review we must apply for a criminal manifest weight challenge:

The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997- Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing

belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive _ the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, _ 25.

{¶27} In evaluating a criminal manifest weight challenge, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of all witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. Accordingly, reversal of a conviction on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

**{¶28}** In conducting this review, this court remains mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The rationale behind this principle is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *Id*.

**{¶29}** For this reason, "a conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent or contradictory testimony." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 72, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38. "[T]he decision whether, and to what extent, to credit the testimony of a particular witness is within the peculiar competence of the fact-finder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54. Thus, it is within the province of the jury to evaluate the credibility of witnesses in light of inconsistent or contradictory testimony. *Rudd* at ¶ 74.

**{¶30}** Here, the jury heard K.T. and M.R. each describe in detail two separate instances when Hernandez sexually assaulted them. The jury also heard corroborating testimony from the girls' parents, the investigating officer, and Detective Hill. Hernandez argues that inconsistencies in K.T.'s and M.R.'s testimony indicate their lack of credibility. However, other than Hernandez's general statement that "[K.T.'s and

M.R.'s family members] were not living in certain homes when the girls alleged these crimes to have occurred," he does not specify any particular inconsistencies between the statements K.T. and M.R. made to police and their trial testimony. We note that defense counsel cross-examined both K.T. and M.R. in the presence of the jury as to the inconsistencies between their statements given to Cleveland police and their trial testimony.

{¶31} Hernandez also points to the following contradictory testimony of K.T. and J.H.: K.T. testified that Hernandez was interrupted the first time he raped her when J.H. knocked on the door, whereas J.H. testified that she did not remember ever having done so. As discussed above, inconsistent and contradictory testimony alone does not render Hernandez's convictions against the manifest weight of the evidence. The jury heard the direct testimony and cross-examination of all witnesses, thus the members of the jury were in the best position to determine the credibility of each witness in light of any inconsistent or contradictory testimony.

{¶32} Based on the foregoing, we cannot conclude that the jury "clearly lost its way" and created such a manifest miscarriage of justice that Hernandez's convictions are against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.

Right to a Fair Trial

**{¶33}** Throughout his first, third, fourth, and fifth assignments of errors, Hernandez argues that certain trial court rulings and testimony introduced at trial cumulatively amounted to a denial of his right to a fair trial.

Joinder of Offenses for Trial

**{¶34}** In the first assignment of error, Hernandez argues that he was prejudiced by having to defend himself against the separate allegations of two victims in one trial, and that the trial court erred in denying his motions to sever.

**{¶35}** We note that Ohio law favors joining multiple offenses in a single trial if the requisites of Crim.R. 8(A) are fulfilled. *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38, citing *State v. Woodson*, 8th Dist. Cuyahoga No. 93476, 2010-Ohio-5230, ¶ 9. Crim.R. 8(A) provides, in relevant part:

> Two or more offenses may be charged in the same indictment * * * if the offenses charged, * * * are of the same or similar character, * * * or are based on two or more acts or transactions connected together * * * or are part of a course of criminal conduct.

**{¶36}** This court has held "[j]oinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Wilson*, 2016-Ohio-2718, 51 N.E.3d 676, ¶ 24 (8th Dist.), quoting *State v. Schaim*, 65 Ohio St.3d 51, 58, 1992-Ohio-31, 600 N.E.2d 661 (1992).

**{¶37}** After reviewing the record, we find that the rape, kidnapping, and GSI offenses were permissibly joined under Crim.R. 8 _ these offenses were of similar character, based on two or more acts or transactions connected together, and were part of

a course of criminal conduct. Both K.T. and M.R. were young children at the time of the offenses. K.T. was related to Hernandez, and he was very close with M.R.'s family.

**{¶38}** Crim.R. 14 provides that a trial court may grant a severance "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95, quoting Crim.R. 14. "The defendant, however, bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance." *Id.*, quoting *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29, citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

**{¶39}** In *Torres*, the Ohio Supreme Court held:

> A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.

*Id.* at syllabus. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St. 151, 157, 404 N.E.2d 144 (1980).

**{¶40}** Hernandez argues that the trial court's denial of his motion to sever the offenses related to each victim, combined with a series of rulings favorable to the state,

made the allegations against him "nearly impossible to defend" and resulted in "prejudice required to be established for a [Crim.R. 14] severance."

{¶41} This court has held that once the defendant has demonstrated prejudice, the state may counter a claim of prejudicial joinder in one of two ways:

> The first is the "other acts" test, where the State can argue that it could have introduced evidence of one offense in the trial of the other severed offense under the "other acts" portion of Evid.R. 404(B). The second is the "joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. If the state can meet the "joinder" test, it need not meet the stricter "other acts" test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B).

*State v. Solomon*, 8th Dist. Cuyahoga Nos. 85303, 85304, 85305, 2005-Ohio-6016, ¶ 13, citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶42} We agree with the state that Hernandez was not prejudiced by the joinder of the offenses against both K.T. and M.R. because the state presented simple and direct evidence as to each instance of sexual assault. We note that the evidence as to each count was clearly delineated between each victim and based upon specific time frames, such that it is unlikely that the jury would confuse the evidence proving the separate offenses. At trial, K.T. and M.R. each detailed two distinct instances of sexual assault. The state provided time frames for each count for which the jury found Hernandez guilty.[2] The jury found Hernandez not guilty of M.R.'s first allegation of sexual assault

---

[2] We note that an indictment charging sexual offenses against children "need not state with specificity the dates of alleged abuse, so long as the prosecution established that the offense was committed within the time frame alleged." *State*

in Counts 5 and 6, presumably because she testified that she could not remember a time frame for that particular sexual assault.

{¶43} Based on the foregoing, we find that the trial court did not abuse its discretion in denying Hernandez's motion to sever. Accordingly, the first assignment of error is overruled.

Other Acts Evidence

{¶44} In the third assignment of error, Hernandez argues that the trial court abused its discretion in allowing the state to introduce evidence of an act of sexual assault of K.T. that was not indicted. He asserts that this ruling, "along with all other rulings made against the defense," cumulatively resulted in the denial of his right to a fair trial.

{¶45} At trial, K.T. testified that there were instances between the first and second sexual assault when Hernandez would try to grab her and that he had touched her breasts. In addressing Hernandez's motion in limine as to this evidence, the assistant county prosecutor explained to the trial court that these allegations were ultimately not indicted because K.T. could not remember a specific enough time frame for the state to seek an indictment of this conduct. The assistant prosecutor argued that the state's purpose for eliciting this testimony was to "prove[] the element of force" and "to establish the defendant's plan or motive and his pattern of conduct of abuse."

{¶46} The Ohio Supreme Court has held that

---

*v. Yaacov*, 8th Dist. Cuyahoga No. 86674, 2006-Ohio-5321, _ 13-14.

[a] trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.

*State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904.

**{¶47}** As a general rule, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Evid.R. 404(A). However, Evid.R. 404(B) provides, in relevant part, that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶48}** Evidence of other acts may also be admissible to establish an element of the crime. *State v. Piert*, 8th Dist. Cuyahoga No. 89803, 2008-Ohio-1828, ¶ 7, citing *State v. Ervin,* 8th Dist. Cuyahoga No. 80473, 2002-Ohio-4093, ¶ 49. In *Piert*, this court noted that "[e]vidence regarding prior acts of molestation upon other individuals or family members, even if not included in the indictment, has been permitted in numerous Ohio jurisdictions, including this one." *Id*. at ¶ 8.

**{¶49}** This court has also recognized that

[r]egarding the applicability of Evid.R. 404(B) to course-of-conduct sexual abuse cases, extensive presentation of evidence of other acts for which a defendant was not indicted can become so pervasive as to deny that defendant a fair trial. *See*, *e.g.*, *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317; *see also State v. Meador*, 12th Dist. Warren No. CA2008-03-042, 2009-Ohio-2195, ¶ 12. However, where the testimony is minimal and vague, no error will be found. *See, e.g.*, *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908.

*State v. Czech*, 8th Dist. Cuyahoga No. 100900, 2015-Ohio-1536, ¶ 30.

**{¶50}** The defendant in *Czech* claimed that the admission of other acts testimony by Czech's victim of sexual assault that occurred outside the indictment was so prejudicial that it resulted in a denial of his right to a fair trial. In *Czech*, we distinguished *Shaw* from *Heft* in order to explain the point at which other acts testimony of sexual abuse becomes so pervasive and extensive that it results in the denial of a defendant's right to a fair trial.

> In *Shaw*, the defendant was indicted for fifteen counts of rape and ten counts of sexual battery against three different victims. At trial, the state elicited testimony about several specific instances of abuse, in addition to "extensive" testimony from each victim that she was abused multiple times each week for several years. On appeal, the state argued that the testimony about the unindicted offenses was admissible under Evid.R. 404(B) because it demonstrated why the victims tolerated the abuse. The Second District disagreed, finding that the state's reasoning at trial for the testimony was different than argued on appeal and failed to establish any of the exceptions under Evid.R. 404(B). The court reversed the defendant's convictions, finding that the "extensive" and "pervasive" testimony about other acts had denied the defendant a fair trial, especially because no limiting instruction regarding the evidence was given. *Shaw* at ¶ 14.

In *Heft*, the defendant was indicted for rape, sexual battery, and gross sexual imposition. At trial, the victim testified that Heft abused her on "multiple occasions." She further testified that there were "many" instances of sexual abuse and then explained how the incidents would occur. The Third District recognized that Heft had been charged with multiple sex abuse offenses and that the victim's testimony about "multiple occasions" could have referenced the indicted offenses. *Id*. at ¶ 63. The

court ultimately found that "these minimal, vague references" did not reach the extensive and pervasive nature of the testimony at issue in *Shaw* and thus found no abuse of discretion in allowing the testimony.

*Czech* at ¶ 31-32.

{¶51} In *Czech*, this court, reviewing the admissibility of other acts evidence under a plain error standard, found that Czech's victims' isolated references to the timing and frequency of the unindicted sexual abuse by Czech were not extensive and did not amount to a denial of Czech's right to a fair trial.

{¶52} Similarly, in the instant case, the testimony elicited by the state from K.T. as to the unindicted sexual assault by Hernandez was limited and vague as to when and how often this conduct occurred. K.T. testified:

> [THE STATE]: Okay. Now, after the first time when [Hernandez sexually assaulted you] at that house, okay, were there other times that you remember when he would do things like that?
>
> [DEFENSE COUNSEL]: Objection, your honor.
>
> [K.T.]: He would —
>
> THE COURT: Overruled.
>
> [K.T.]: He would only — look at me weird, and there was [sic] times where he tried to touch me but he didn't get a chance to.
>
> * * *
>
> [THE STATE]: Okay. And you said he would try to grab you. What was he doing?
>
> [K.T.]: He, like, if you don't know he's there, he would like, come up behind me and he would just touch me but only for a short amount of time.

[THE STATE]: Where on your body would he touch you?

[K.T.]: On my breast.

[THE STATE]: Was it on top of your clothes or underneath?

[K.T.]: On top of.

[THE STATE]: And do you remember, was this close to the first time of it [the sexual assault] happening or was it a long time after?

[K.T.]: A long time after.

**{¶53}** We find that K.T.'s testimony alleging unindicted sexual abuse by Hernandez was both minimal and vague, akin to the other acts testimony at issue in *Czech* and *Heft*. Therefore, we do not find that the trial court abused its discretion in allowing the state to elicit this other acts testimony from K.T., nor do we conclude that Hernandez was prejudiced. Accordingly, the third assignment of error is overruled.

Immigration Status

**{¶54}** In the fourth assignment of error, Hernandez argues that he was denied a fair trial because his status as a noncitizen was "hinted at by Detective Hill" in her direct examination.

**{¶55}** Prior to jury selection, the parties stipulated that Hernandez's immigration status would not be mentioned in the presence of the jury. The state confirmed to the trial court that it would "instruct witnesses * * * not to make any reference [to Hernandez's immigration status], and certainly no questions will address the topic."

**{¶56}** However, Detective Hill, a state witness, made an umprompted reference to Hernandez's immigration status.

[THE STATE]: And are you able to obtain information from [K.T.] that you then used in your investigation?

[Detective Hill]: Yes.

[THE STATE]: Following that interview [of K.T.], what did you do next?

[Detective Hill]: I spoke to, I believe it was our Intelligence Unit, due to the suspect's status.

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Sustained.

**{¶57}** As illustrated above, Detective Hill's reference to Hernandez's immigration status was vague and was clearly not prompted by the state. Hernandez recognizes that this testimony merely "hinted at" his immigration status. Defense counsel objected to and cut off Detective Hill's testimony before she could elaborate as to what she meant when she mentioned Hernandez's "status." The trial court properly sustained the objection, and no further mention was made of Hernandez's noncitizen status.

**{¶58}** The objection to Detective Hill's comment was sustained. Consequently, there was no error. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 171, citing *Viox v. Weinberg*, 169 Ohio App.3d 79, 2006-Ohio-5075, 861 N.E.2d 909 (1st Dist.). Accordingly, the fourth assignment of error is overruled.

<u>Cross-Examination of Detective Hill</u>

**{¶59}** In the fifth assignment of error, Hernandez argues that he was denied a fair trial because the trial court denied his attempts to attack inconsistencies in K.T. and M.R.'s testimony and the credibility of these victims through the cross-examination of

Detective Hill. The trial court ruled that Hernandez's defense counsel could elicit general testimony from Detective Hill that K.T. and M.R.'s statements were inconsistent with their trial testimony, but did not allow the defense to explore the specific inconsistencies through her cross-examination.

**{¶60}** Evid.R. 701 limits the testimony of lay witnesses "to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." This court has held that "lay witnesses are prohibited from testifying as to another witnesses's veracity." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 113. "'[I]t is the fact-finder, not the so-called expert or lay witness, who bears the burden of assessing the credibility and veracity of witnesses.'" *Id.*, citing *State v. Burchett*, 12th Dist. Preble Nos. CA2003-09-17 and CA2003-09-18, 2004-Ohio-4983, ¶ 19, quoting *State v. Boston*, 46 Ohio St.3d 108, 129, 545 N.E.2d 1220 (1989), quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

**{¶61}** We note that Hernandez's defense counsel had the opportunity to and did indeed inquire of K.T. and M.R. as to inconsistencies between statements they made to Detective Hill and their trial testimony. Therefore, Hernandez's claim that he was prejudiced by the trial court's refusal to allow defense counsel to explore these inconsistencies through the cross-examination of Detective Hill is unpersuasive. Ultimately, such a line of questioning would have been an improper attempt to illicit a lay witness to comment on the veracity and credibility of another witness. *Pawlak* at ¶ 113.

{¶62} Based on the foregoing, we find that the trial court properly limited Hernandez's defense counsel's attempts to attack the credibility of K.T. and M.R. through the cross-examination of Detective Hill.

{¶63} Accordingly, the fifth assignment of error is overruled.

{¶64} Judgment is affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR