[Cite as *State v. Sykes*, 2022-Ohio-865.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo          Court of Appeals No. L-21-1181

       Appellee                       Trial Court No. CRB-21-03894

v.

Pierre Sykes                   **<u>DECISION AND JUDGMENT</u>**

       Appellant                 Decided: March 18, 2022

* * * * *

David Toska, City of Toledo Chief Prosecuting Attorney, and
Christopher D. Lawrence, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Pierre Sykes, appeals the judgment entered by the Toledo Municipal Court, sentencing him on misdemeanor charges of domestic violence, endangering children, and assault. For the reasons that follow, we affirm the judgment of the trial court.

## Statement of the Case

{¶ 2} On or about May 8, 2021, complaints were filed against appellant, alleging domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree; endangering children, in violation of R.C. 2919.22, a misdemeanor of the first degree; and assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree. It was alleged that during an argument that occurred in the bathroom between appellant and his wife, L.S., appellant pulled L.S.'s hair and pulled off her shirt, placing L.S. in fear of appellant. It was further alleged that, during the same altercation, C.B., appellant's juvenile stepson, tried to get into the bathroom in order to protect his mother, and that appellant "slammed" the door on C.B.'s arm and leg. On May 18, 2021, appellant entered pleas of not guilty to each charge.

{¶ 3} On June 30, 2021, a bench trial was held. After the state rested its case, defense counsel moved for acquittal pursuant to Crim.R. 29. The motion was denied. Thereafter, the trial court found appellant guilty on all three counts.

{¶ 4} On July 15, 2021, appellant was sentenced to serve 180 days jail time on each count, with all days being suspended. Appellant was placed on one year of active probation. In addition, appellant was ordered to have no further offenses and to complete a batterer's intervention course. Appellant timely filed an appeal.

2.

**Statement of the Facts**

{¶ 5} At trial, the following evidence was presented. On May 7, 2021, Toledo Police Officer William Gregus arrived at the marital home and saw L.S. sitting in her car, naked from the waist up, with her two older children – boys, ages 10 and 12 – also in the car. He testified that he did not see any evidence of a struggle and did not notice anything "wrong" with L.S., other than that she was naked from the waist up and that she refused to put on a shirt that was offered to her by police. He clarified that L.S. appeared "distressed," "upset," and "fearful," inasmuch as she was out in her car waiting for police to arrive, but that he did not see that she had any visible injuries. Officer Gregus questioned appellant on the scene. Appellant told him that an incident occurred while he was in the bathroom, attempting to have a conversation with his wife. Officer Gregus learned that the children were involved when he saw that the older boy, C.B., had a fresh, slightly bruised, raised mark on his left arm. Officer Gregus went into the home and saw that the bathroom door was off its hinges and that there was a shirt on the floor. The shirt did not appear to be ripped.

{¶ 6} C.B. testified that L.S. had just arrived home and that she "just went to take a shower and lay down." C.B. heard his parents arguing in the bathroom, so he went to see what was going on, but the bathroom door was shut. He testified that he and his little brother tried to get in, and that he had succeeded in putting his arm and leg through the door, when appellant tried to slam the door closed, causing injury to C.B.'s arm. C.B.

3.

acknowledged that appellant had told him that appellant wanted to have a "private conversation" with C.B.'s mother, but C.B. added that the conversation "didn't seem private at all." He testified that appellant was "hitting [L.S.], just ripped her shirt off and stuff." C.B. subsequently clarified that, although he did see appellant hit his mother in the bathroom, he did not see appellant "rip off" his mother's shirt. He further testified that L.S. was "silent" the entire time she was in the bathroom, and that appellant was doing all of the yelling and screaming. C.B. stated that after the door was slammed on him, he retreated to his room. He said that the slammed door left a "giant," "swollen," "red spot," on his "whole arm." He was later taken to the hospital by L.S., where he was informed that he had a bruise. At some point, L.S. left the bathroom and went outside to her car. C.B. testified that L.S. was crying when she came out of the bathroom. Although he did not see that she had any injuries, he saw that "some of her hair was pulled out" and that there were pieces of her hair in the hallway upstairs. C.B. testified that he was not in fear for his own safety, but that he was just making sure that his mother, brother, and "everybody else," were ok.

{¶ 7} L.S. testified that earlier on the day in question, she was preparing to take the couple's daughter to a dentist appointment, but then appellant took L.S.'s keys and phone, causing her to become angry. The police were called. After they arrived, they arrested L.S. on an outstanding warrant from a 2019 domestic violence incident that involved her as the alleged perpetrator against appellant. She spent the remainder of the

4.

day in jail and was released at some point that evening. L.S. testified that when she returned home she was tired, hungry, and mad, and did not want anything to do with appellant. She stated that appellant "kept talking" to her and that she ignored him. She went to the bathroom to take a shower, and appellant followed after her, "constantly talking." Thereafter, talking became yelling, and appellant started "slamming doors." She stated that C.B. and his brother were trying to get into the bathroom because they heard her "yelling and screaming" and they "wanted to see what was going on." She testified that appellant pushed her into the window, pulled out one of her braids, and ripped off her shirt. In contrast to C.B.'s testimony that L.S. was silent while appellant was doing all of the yelling and screaming, L.S. testified that she, too, was yelling and screaming. She saw appellant "push" C.B.'s arm and leg in the door, as C.B. was trying to open it, but she admitted that she was not sure whether appellant did it on purpose, because she did not think that appellant would intentionally hurt the children. Soon after, L.S. called the police and then went outside and got into the car with the two boys.

{¶ 8} Finally, appellant testified in his own defense. He stated that L.S. had spent the morning of May 7 making a mess of the house and yelling and screaming, because she was angry. He confirmed that he called the police on L.S. as the result of her behavior, that the police arrested L.S. and took her to jail, and that when she returned from jail, she was still angry with him. Appellant testified that he followed L.S. into the bathroom in an attempt to talk to her and that she "instantly just started screaming and

5.

hollering, like, screaming help; [s]he just constantly kept screaming help, help, help," and "[t]hat's what brought the boys to the bathroom." He stated that the door would not open, because he was "standing on the door already," and that when the boys started to force the door, he "just slid his foot behind" it so they wouldn't come in, because L.S. was "already taking her shirt off." He further testified that "when she was taking her shirt off she was still screaming help out the window," and "that's when [the boys] were forcing me, trying to come into the bathroom." According to appellant, the force that the boys were putting on the door caused the door to come off of its hinges, and so he "finally decide[d] to let them out because they had squashed in[,] [a]nd, like, [C.B.] had his arm on the door to where, like, I didn't want to shut it, so I just opened the door up[,] [a]nd when I opened the door up, they came in and then I went out – we all went out at the same time basically." He stated that he called the police and then took a shirt outside for L.S. to put on, but that she refused to wear it. When the police arrived, appellant took them to the upstairs bathroom so they could search for the braid that was alleged to have been ripped out and for the shirt that was alleged to have been torn off. Appellant denied having touched L.S. at all, and specifically denied having ripped out one of her braids.

**Assignment of Error**

{¶ 9} Appellant asserts the following assignments of error on appeal:

I. The Complaint as it related to the Endangering Child charge was defective as it failed to cite a subsection under which Sykes was charged

and his Trial Counsel's failure to move to dismiss the complaint prior to trial caused Sykes to suffer ineffective assistance of counsel.

II. The finding Sykes committed Child Endangering against C.B. was against the sufficiency of the evidence.

III. The finding Sykes committed domestic violence against L.S. was against the manifest weight of the evidence.

IV. The finding Sykes assaulted C.B. [sic] was against the sufficiency of the evidence.

## Analysis

{¶ 10} Appellant argues in his first assignment of error that the complaint charging him with endangering children was defective for failing to specify the subsection of R.C. 2919.22 under which he was charged, and that his trial counsel was ineffective for failing to move to dismiss the complaint prior to trial.

{¶ 11} Appellate review of the sufficiency of a complaint is de novo. *State v. Ebraheim*, 6th Dist. Lucas No. L-14-1157, 2015-Ohio-4055, ¶ 30. A complaint is the basic charging instrument in all criminal proceedings in this state. *State v. Wood,* 48 Ohio App.2d 339, 343, 357 N.E.2d 1106 (8th Dist.1976). Crim.R. 3 provides that the complaint "is a written statement of the essential facts constituting the offense charged," which written statement "shall also state the numerical designation of the applicable statute or ordinance." Crim.R. 3; *see also State v. Vertrees*, 3d Dist. Hancock No. 5-20-

31, 2021-Ohio-1239, ¶ 8. "The purpose of an indictment or complaint is to inform the accused of the offense with which he is charged so that he may prepare for trial." *State v. Sottek*, 6th Dist. Lucas No. L-87-150, 1988 WL 28113, *2 (Mar. 4, 1988), citing *State v. Morris*, 8 Ohio App.3d 12, 16, 455 N.E.2d 1352 (8th Dist.1982). "However, the requirements of a complaint are not as strictly construed as those for an indictment. *Sottek* at *2, citing *Toledo v. Tucker*, 99 Ohio App. 346, 347, 133 N.E.2d 411 (6th Dist.1954). Thus, in most instances, citation to a particular code section need not be stated. *Sottek* at *2. An exception to this general rule is where the complaint does not contain essential facts that inform a defendant of the offense with which he is charged, in which case "reference to a numerical designation of the applicable ordinance becomes pivotal." *Id.*

{¶ 12} "In general, defects in a complaint must be objected to by motion prior to trial or the objection is deemed waived." *Sottek* at *2; *see also* Crim.R. 12 (C)(2). Because appellant did not object to the alleged defect in the complaint before trial, he waived all but plain error. *See Vertrees* at ¶ 12. "To reverse a decision based on plain error, a reviewing court must determine that a plain (or obvious) error occurred that affected the outcome of the trial." *Id.* (citation omitted). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-1414, 2015-Ohio-2977, ¶ 63.

8.

{¶ 13} R.C. 2919.22, the statute that governs the offense of endangering children, has three relevant subsections outlining conduct that is prohibited under the statute:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *

(B) No person shall do any of the following to a child under eighteen years one years of age,

of age * * *:

(1) Abuse the child;

(2) Torture or cruelly abuse the child;

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;

(4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development;

9.

(5) Entice, coerce, permit, encourage, compel, hire, employ, use, or allow the child to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that the offender knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter;

(6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

(C)(1) No person shall operate a vehicle, streetcar, or trackless trolley within this state in violation of division (A) of section 4511.19 of the Revised Code [driving while under the influence of drugs or alcohol] when one or more children under eighteen years of age are in the vehicle, streetcar, or trackless trolley.

R.C. 2919.22 (A), (B), (C).

{¶ 14} The complaint in the instant case provides the following statement of the essential facts:

> Defendant was engaged in a domestic altercation with his wife at their residence. During the altercation, a juvenile victim, [C.B.] attempted to get into the bathroom where the altercation was occurring in order to protect his mother. Defendant Sykes slammed the bathroom door onto that arm and leg of the juvenile, causing a noticeable bruise on the victim's left arm.

{¶ 15} Review of the relevant statute, together with the written statement of the facts, leads us to conclude that appellant had ample notice that he was being charged with violating R.C. 2919.22(A). Most of the subsections of R.C. 2919.22 can be eliminated as possibilities by process of elimination. For example, R.C. 2151.23(A)(6) provides that the juvenile court has exclusive jurisdiction to hear a case in which an adult is charged with violating R.C. 2919.22 (B)(1), as long as there is no felony that is attached. Here, appellant was not charged with any underlying felony, so only the juvenile court -- and not the Toledo Municipal Court -- would have had subject matter jurisdiction to proceed under R.C. 2919.22(B)(1). The remaining subsections of R.C. 2919.22(B), namely two through six, are felony offenses. *See* R.C. 2919.22(E)(3) and (4). The complaint in this case specifies that the offense of endangering children was charged as an "M1," a first-degree misdemeanor.

{¶ 16} Besides R.C. 2919.22(A), the only other subsection under the statute that classifies prohibited behavior as a first-degree misdemeanor is R.C. 2929.19(C)(1), which subsection deals with operating a motor vehicle while under the influence of drugs or alcohol with one or more children in the vehicle. As nothing in the description of the facts references driving while intoxicated with minor children in the vehicle, a reasonable person would necessarily conclude that he or she was not being charged with R.C. 29190.22(C)(1). Thus, the only remaining logical charge over which the court had subject matter jurisdiction and which classifies the prohibited behavior as a first-degree misdemeanor is a violation under R.C. 2919.22(A), which prohibits conduct that would create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. Under the circumstances of this case, we conclude that appellant was adequately informed of the offense with which he is charged. *See Sottek*, 6th Dist. Lucas No. L-87-150, 1988 WL 28113, *2 (Mar. 4, 1988). Accordingly, there was no plain error. *See Vertrees*, 3d. Dist. Hancock No. 5-20-31, 2021-Ohio-1239, at ¶ 12.

{¶ 17} We turn now to appellant's assertion that his trial counsel's failure to move to dismiss the complaint prior to trial caused appellant "to suffer" ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant "must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance." *State v. Savola*, 8th Dist. Cuyahoga No. 108829, 2020-Ohio-1389, 153 N.E.3d 783, ¶ 19, citing *Strickland v.*

12.

*Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Prejudice is established when the defendant demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Savola* at ¶ 19, citing *Strickland* at 694.

{¶ 18} Here, there is nothing in the record to suggest either that trial counsel's performance fell below an objective standard of reasonable representation or that appellant was prejudiced by trial counsel's performance. First, it is well established that "even debatable trial tactics do no constitute a deprivation of the effective assistance of counsel." *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). In the instant case, the record demonstrates that counsel was able to fully develop cross-examination with each of the state's witnesses. At the close of the state's case, defense counsel made a motion for acquittal pursuant to Crim.R. 29(A). Specifically, counsel argued that the state had failed to present any evidence showing that appellant had recklessly created a substantial risk to the health or safety of the child by violating a duty of care. Counsel's argument tracks exactly with the language of R.C. 2919.22(A), indicating counsel's awareness of the specific subsection under which appellant had been charged.

{¶ 19} Even if counsel had objected to the alleged deficiency in the complaint, the state would have been permitted to amend the complaint pursuant to Crim.R. 7(D). "Crim. R. 7(D) permits a trial court to "at any time before, during, or after trial amend the

* * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." *Vertrees* at ¶ 10. In this case, adding the proper subsection would not have changed the name or the identity of the crime charged. The crime charged would still be "endangering children," as a misdemeanor of the first degree, and the facts set forth in the complaint would not be any different. Because the state would have been allowed to amend the complaint, we do not find that any prejudice resulted from trial counsel's failure to move for its dismissal. *See Savola* at ¶ 19. For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.

{¶ 20} Appellant argues in his second assignment of error that his conviction for child endangering was against the sufficiency of the evidence. "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *In re A.T.*, 8th Dist. Cuyahoga No. 110123, 2021-Ohio-2934, ¶ 42. The relevant question is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 21} As indicated above, appellant was convicted of violating R.C. 2919.22(A), which relevantly provides that:

14.

No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). The state must also prove that appellant acted recklessly. *See State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus ("The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A).") As set forth at R.C. 2901.22(C):

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

"Thus, to support a conviction for child endangering under R.C. 2919.22(A), it must be established, beyond a reasonable doubt, that [the defendant] (1) recklessly (2) created a substantial risk to the health or safety of one or more of his children (3) by violating a duty of care, protection or support." *State v. Kouame*, 8th Dist. Cuyahoga No. 108559,

15.

2020-Ohio-3118, ¶ 20, citing *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 25 (8th Dist).

{¶ 22} Here, testimony by L.S. and C.B. established that appellant, while arguing with L.S., slammed the bathroom door on C.B.'s arm and leg, resulting in bruising. Officers took photographs of the broken bathroom door and testified to the bruising to C.B. The evidence established that C.B. was not merely a bystander to a verbal altercation between appellant and L.S. Instead, testimony by C.B. established that C.B. tried to get into the bathroom to see what was going on between appellant and his mother. As he was attempting to get through the door that appellant had been holding closed, appellant – who admittedly wanted to keep C.B. out of the bathroom -- slammed the door onto his arm and leg. Construing the evidence in a light most favorable to the state, as we are required to do, we find that there was sufficient evidence establishing that appellant recklessly created a substantial risk to the health or safety of C.B. by violating a duty of care or protection. Accordingly, appellant's second assignment of error is found not well-taken.

{¶ 23} In his third assignment of error, appellant argues that his conviction for domestic violence against L.S. was against the manifest weight of the evidence. "In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion." *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in

16.

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E. 2d 541. Reversal of a conviction on the grounds of manifest weight is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

{¶ 24} Appellant claims that reversal of his conviction for domestic violence is proper, because "L.S. and C.B. are not credible" due to "discrepancies in their stories." Specifically, appellant states:

> Here, L.S. testified Sykes ripped off her shirt. But, Officer Gregus testified that the shirt did not appear to be ripped. C.B. testified Sykes ripped the shirt off L.S. then admitted he did not see Sykes do it. He further testified he saw Sykes hit L.S. but L.S. testified she was not hit by L.S. but pushed into a window. C.B. testified his mother was silent the entire time she was in the bathroom but L.S. admitted she was yelling and screaming. These wildly different stories completely render C.B.'s testimony about what supposedly occurred as completely uncredible and must be completely discounted by this Court.

{¶ 25} In conducting our analysis, we are mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to determine. *State v. Hernandez,* 2018-Ohio-738, 107 N.E.3d 182, ¶ 28 (8th Dist.) "The rationale

behind this principle is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible." *Id.* Thus, it is for the fact finder "to evaluate the credibility of witnesses in light of inconsistent or contradictory testimony." *Id.* at ¶ 29. "[A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory." *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 40.

{¶ 26} Here, although there were minor inconsistencies between the C.B.'s and L.S.,'s statements, we find that their accounts were largely consistent in all material respects. Both C.B. and L.S. testified that appellant ripped a braid out of L.S.'s hair and slammed the door onto C.B.'s leg and arm. C.B. is a 12-year-old child who watched appellant assault his mother. He remembered that his stepfather yelled during the incident. L.S. testified that she was also yelling, and her screams were what brought C.B. to the bathroom door. C.B. testified that he tried to get into the bathroom, but could not. When he put his arm and leg through the door, appellant slammed it shut on him, causing bruising to his arm. L.S. also testified that appellant shut the door on C.B.'s arm and leg, although she admitted that she was not sure whether the action was intentional.

{¶ 27} C.B. testified that he saw the braid of his mother's hair lying in the hallway. L.S. also testified that her braid of hair was in the hallway when she fled. She explained that appellant remained in the home while she was outside, before officers

18.

responded to the scene. She suspects that appellant disposed of it before the officers arrived. C.B. testified to seeing his mother's shirt on the bathroom floor. He admitted on cross examination that he did not see appellant rip it off of her. L.S. testified that appellant had torn it off of her. The responding officer saw a shirt on the floor of the bathroom, but said it did not appear to be ripped. L.S. testified that appellant had shoved her into the window of the bathroom. C.B. testified that he saw appellant strike his mom. These slight inconsistencies do not amount to manifest injustice. L.S., C.B., and appellant himself all testified that appellant was in the bathroom with L.S. at the time of the incident.

{¶ 28} According to appellant, all he did was follow L.S. into the bathroom because he wanted to talk, and for no apparent reason, L.S. started yelling for help, "like [appellant was] killing her." He testified that L.S.'s cries for help brought C.B. to the door. He indicated that he held the door shut with his foot so that C.B. could not get into the bathroom, because L.S. "was taking her shirt off" as she was "screaming out the window." According to appellant, he did not shut the door on C.B.'s arm or leg at all. Appellant's first move after L.S. and C.B. fled was to call the police, "because [he] didn't want to have a situation to make [him] seem like [he] was the bad person." He denied ever striking L.S and he denied ever shutting the door on C.B.'s arm and leg.

{¶ 29} The trial court was clearly in the best position to judge the credibility of each witness who testified. After reviewing the record, we find appellant's conviction for

domestic violence was not against the manifest weight of the evidence. We do not find that the trial court, as the finder of fact, clearly lost its way in weighing the evidence, in considering the credibility of witnesses, or in resolving conflicts in the evidence. Nor do we find that this is the exceptional case in which the evidence weighs heavily against conviction. Therefore, appellant's third assignment of error is found not well-taken.

{¶ 30} Defendant argues in his fourth, and final, assignment of error that his conviction for assault was against the sufficiency of the evidence. As indicated above, the relevant question is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *In re A.T.*, 8th Dist. Cuyahoga No. 110123, 2021-Ohio-2934, ¶ 42, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶ 31} Specifically, appellant argues that the state failed to present any evidence that appellant "bit or struck" L.S. In making this argument, appellant erroneously claims that the complaint for assault provides that "[t]he defendant Mr. Sykes did slap and bit the victim, [L.S.] in the head and face. [L.S.] is the source of this information * * *."

{¶ 32} The complaint that was before the trial court and from which appellant appeals in this case reads: "Defendant Pierre Sykes knowingly pulled the hair of Victim [L.S.] and pulled her shirt off. Victim was in fear for her safety. This offense was stated to this officer 2582 by the Victim. This offense did occur at 2827 D St, City of Toledo, Lucas Co., Ohio."

20.

{¶ 33} The assault provision, codified at R.C. 2903.13(A), states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 34} In the instant case, L.S. and C.B. both testified to appellant's actions. L.S. indicated that her hair was torn out and her shirt, ripped off. C.B. indicated that he saw his mother's braid lying on the floor in the hallway, and her shirt lying in the bathroom. Viewing the testimony in a light most favorable to the prosecution, each element of the assault charge was proven beyond a reasonable doubt. Accordingly, appellant's fourth assignment of error is found not well-taken.

{¶ 35} For all of the foregoing reasons, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Gene A. Zmuda, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.