[Cite as *State v. Redmond*, 2025-Ohio-313.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                             Court of Appeals No.  WD-23-063

      Appellee                                        Trial Court No. 2023 CR 0103

v.

Christina Marie Redmond                          **DECISION AND JUDGMENT**

      Appellant                                       Decided: January 31, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Misty Wood, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Christina Redmond, appeals the December 5, 2023 judgment of the Wood County Court of Common Pleas which, following a jury trial finding her guilty of endangering children, sentenced her to community control.  Because the conviction is supported by sufficient evidence, it is affirmed.

## I. Facts and Procedural History

{¶ 2} On February 25, 2023, Redmond took her eight-week-old son, Js.H., to Wood County Hospital's emergency room. Medical personnel diagnosed him with a broken femur and rib and transferred him to Toledo Children's Hospital for treatment. After repeated requests by children services and police, on February 27, Redmond brought Js.H.'s twin, Ja.H., to Wood County Hospital for evaluation. Medical personnel diagnosed her with a skull fracture and transported her to Toledo Children's Hospital.

{¶ 3} On March 16, 2023, the Wood County Grand Jury indicted Redmond on two third-degree felony counts of endangering children, R.C. 2919.22(A) and 2919.22(E)(2)(c). Redmond pleaded not guilty to the charges.

{¶ 4} The case proceeded to trial on October 23, 2023. Reviewing the children's medical records, their pediatrician, Dr. Mike Lemon, testified that the twins were born prematurely at the end of December, 2022. After a NICU stay, they were discharged in early February. Both children were seen at his office on February 6, 2023; Dr. Lemon noted no broken bones or abnormalities. Dr. Lemon testified that on February 24, 2023, a home healthcare nurse visited the twins. Discharging them from home healthcare, the nurse's notes indicated that they were meeting development goals.

{¶ 5} Dr. Lemon testified that failure to promptly treat a bone fracture can cause bleeding, infection, and improper healing. Risks of an untreated skull fracture include pressure and bleeding in the cranial cavity. Dr. Lemon agreed that bone fractures are often confirmed by x-rays, not visual observation alone.

2.

{¶ 6} North Baltimore Police Officer Andrew Burmeister testified that on February 25, 2023, he responded to a call of an infant with suspicious injuries at Wood County Hospital. Officer Burmeister observed the x-ray of Js.H.'s broken femur. Officer Burmeister followed the ambulance transporting Js.H. to Toledo Hospital. Upon arrival, he met with a Wood County Job and Family Services (WCJFS) caseworker and an investigator with the Wood County Prosecutor's office.

{¶ 7} Officer Burmeister testified that North Baltimore Police dispatched an officer to Redmond's home to conduct a welfare check on the remaining children. Later, Officer Burmeister accompanied WCJFS to the home to implement their safety plan. Burmeister stated that he observed Ja.H. sitting, unrestrained on the couch, with an older sibling who played video games.

{¶ 8} Continuing his investigation, Officer Burmeister obtained a search warrant gaining access to Redmond's and the twins' father's phones. Police gave the extracted data to the prosecutor's office.

{¶ 9} North Baltimore Police Officer Tyler Nagy testified that on February 25, 2023, he conducted a welfare check at Redmond's home. Officer Nagy stated that the small, two-bedroom trailer was messy, there were multiple highchairs extending into the living area and toys and blankets covering the floor. Officer Nagy observed Ja.H. who appeared to be sleeping and not in distress.

{¶ 10} Redmond's daughter, A.G., testified that she is 17 and currently in foster care. A.G. testified that in February 2023, her mom left Ja.H. alone in the back bedroom

3.

to make bottles. Her three-year old sister ran into the room and they heard a thud. A.G. observed the three-year old on the bed and Ja.H. on the floor crying. A.G. testified that the three-year old was jealous of the twins.

{¶ 11} Brynn Burr, an investigator with the Wood County Prosecutor's office, testified her involvement in the case began on February 25, 2023, following a call from WCJFS. She met with the twins' parents at Toledo Children's Hospital.

{¶ 12} Burr testified that Redmond denied knowledge of what caused Js.H.'s injuries. Redmond stated that when she worked, her boyfriend, Jason, the twins' father, helped care for the children. Burr testified to the following timeline of the relevant events as relayed by Redmond and evidenced in her cell records. On the morning of February 23, 2023, Jason left for a short trip. The visiting nurse texted to set up a visit the following day to discharge the twins from the program. On February 24, Redmond noticed something wrong with Js.H.'s leg; she texted coworkers in a group chat asking if anyone could cover her work shift. She also texted and called Jason regarding Js.H.'s leg. Redmond agreed to seek medical care for Js.H.

{¶ 13} Jason texted asking if Js.H. had seen the doctor; Redmond stated that she took him to urgent care. She texted co-workers again complaining that it was the worst day of her life, that the twins' father was leaving her, that there was something wrong with her baby's leg, and that her toddler pushed or threw Ja.H. off the bed.

4.

{¶ 14} Jason returned the evening of Friday, February 24. They decided to take Js.H. to the hospital if his leg did not improve. Burr's investigation began at 11:00 a.m. the next morning after receiving a call from the hospital.

{¶ 15} Burr testified that following Js.H.'s hospitalization, WCJFS implemented a safety plan preventing Redmond or Jason from being alone with any of the children. WCJFS also conducted a home site and safety check.

{¶ 16} On Saturday, February 25, Burr told Redmond to take Js.H.'s twin sister, Ja.H., to the emergency room for an evaluation. After WCJFS again told Redmond she needed to take Ja.H. to the emergency room, on Monday, February 27, she was evaluated and diagnosed with a skull fracture and then transported to Toledo Children's Hospital.

{¶ 17} Burr questioned Redmond about the injury; she failed to inform Burr that Ja.H.'s sister pushed her off the bed. Burr acknowledged that Ja.H. had no observable injuries and there were no reports of the child being in distress.

{¶ 18} Dr. Kayleene Pagan Correa, an emergency room physician at Toledo Children's Hospital, testified that she treated the children's injuries as described in the medical records. The State admitted the exhibits and rested its case.

{¶ 19} Redmond moved for a directed verdict on both child endangering counts. Redmond contended that the State failed to prove that she recklessly failed to seek medical treatment for her children because she lacked knowledge of the extent or existence of their injuries. The court overruled the motion.

5.

{¶ 20} Redmond then presented her case. Her son, A.G., testified that in February 2023, he lived in the trailer with his mother, uncle, and siblings. A.G. stated that his mom was very gentle with the twins and constantly worried about their health. A.G. stated that Redmond never physically disciplined her children. A.G. never observed any injuries on the twins or observed them in distress. A.G. stated that the mark on Js.H.'s leg looked like a bug bite and that when they manipulated it, he showed no discomfort.

{¶ 21} Redmond's brother, William Atkins, testified that Redmond, her boyfriend, and her children lived in his trailer. Atkins worked third shift and slept at the trailer during the day. He testified that Redmond cared for the children unless she was working and then Jason would watch them. Atkins stated that Redmond did not physically discipline the children.

{¶ 22} A.R., Redmond's daughter, testified that her mom was good with the twins. She stated that Redmond worked a lot and provided for her children. When she was at work, Jason watched the children. She and her sister would also help.

{¶ 23} A.R. said that she observed what looked like a bug bite on Js.H.'s leg. They tried to figure out what happened after learning that it was broken. A.R. admitted that one of the toddlers, E.R., was a little rough with the twins but did not think that she would intentionally hurt them.

{¶ 24} A.R. testified that when Ja.H. was pushed off the bed, she was in the living room and saw her mom step out of the bedroom. E.R. went into the bedroom and they

6.

heard a "big thump." They rushed in and found Ja.H. on the floor crying. They did not observe any injuries and Ja.H. stopped crying.

{¶ 25} Redmond testified that her twins were born prematurely and spent six weeks in the neonatal intensive care unit. They were discharged in the first week of February 2023. Redmond stated that the twins' received bi-weekly visits from a home healthcare nurse the first three weeks they were home. The nurse visited the last time on the morning of February 24, 2023.

{¶ 26} Prior to the nurse's final visit, Redmond observed what she believed was a bug bite on Js.H.'s left upper thigh. The nurse agreed that it looked like a bite. On Friday, February 24, Redmond attempted to take him to the doctor but could not get an appointment. She admitted that she lied to Js.H.'s father about taking him to urgent care. She stated that he was "hounding" her and she and lied because she did not believe there was anything wrong with the child. On Saturday morning, she noticed swelling in Js.H.'s leg and took him to the hospital.

{¶ 27} Redmond testified that on one occasion her toddler, E.R., climbed into Js.H.'s Pack-n-Play in the middle of the night and stepped on his leg.

{¶ 28} Redmond testified that she took Ja.H. to Wood County Hospital on Monday, February 27. Redmond testified that she waited until Monday because "CPS didn't make it clear to me on when they wanted her to be checked out[]" and that "[t]hey made it sound like that I could have her there by Monday morning." She did not believe that Ja.H. was injured.

7.

{¶ 29} Nurse Melissa Ison testified that she managed the twins' home healthcare for approximately three to four weeks following their hospital discharge. As case manager, her responsibilities included monitoring their weights, checking vitals and reflexes, making sure feedings were going well, and supporting their parents.

{¶ 30} Ison testified that she examined the twins on the morning of February 24, 2023. Redmond pointed out the mark on Js.H.'s leg which Ison stated appeared to be a pimple or lump from a bug bite. Ison stated that the leg was slightly red and swollen. She manipulated the leg and Js.H. showed no distress. She testified that Js.H. did not appear to need emergency care. Ison stated that Ja.H. displayed no injuries. The twins were discharged from home healthcare that day.

{¶ 31} At the close of Redmond's case, she renewed her Crim.R. 29 motion. The court overruled the motion. Following deliberations, the jury acquitted Redmond of the endangering charge relating to Js.H., but found her guilty of the endangering charge relating to Ja.H. This appeal timely followed.

## II. Assignment of Error

I. The trial Court abused its discretion in denying Ms. Redmond's motion for a directed verdict.

## III. Analysis

### A. Standard of Review

{¶ 32} "The denial of a motion for acquittal under Crim.R. 29(A) 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Haynes*, 2020-Ohio-1049, ¶ 24 (6th Dist.), quoting *State v. Tenace*,

8.

2006-Ohio-2417, ¶ 37. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Sproles*, 2023-Ohio-3403, ¶ 33 (6th Dist.)

### B. Sufficient Evidence Supports the Verdict.

{¶ 33} The jury found Redmond guilty of one count of child endangering, R.C. 2919.22(A), which provides: "No person, who is the parent . . . of a child under eighteen years of age . . ., shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."

> A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). The state must also prove that appellant acted recklessly. *See State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus ("The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A).")

*State v. Sykes*, 2022-Ohio-865, ¶ 21 (6th Dist.). Under R.C. 2901.22(C):

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 34} A parent's duty of care includes the duty to seek medical treatment for an injured child. *State v. Williams*, 2024-Ohio-2438, ¶ 9 (9th Dist.), citing *State v. Grad*,

9.

2012-Ohio-1358, ¶ 31, 40 (9th Dist.). This duty extends to harm inflicted on a child while in a parent's care even if he or she did not personally cause the injury. *Id.*, quoting *State v. Gaver*, 2016-Ohio-7055, ¶ 54 (5th Dist.).

{¶ 35} Redmond claims that the evidence presented at trial failed to establish that she recklessly created a substantial risk of harm to Ja.H. because a reasonable person would not have known she was injured. The State counters that Redmond violated a duty of care to Ja.H. by failing to seek immediate medical treatment (1) following Ja.H. being thrown from the bed and (2) by ignoring the repeated requests to take her to the hospital.

{¶ 36} Reviewing the evidence in a light most favorable to the State, the court finds that sufficient evidence supports Redmond's child endangering conviction. At trial, the State presented evidence that Redmond heard a loud "thud," went into the bedroom and saw Ja.H. on the floor crying. When asked by law enforcement, Redmond denied having any knowledge of the cause of the injury. Redmond knew that her toddler was jealous of and had been rough with the twins. Despite this and following Js.H.'s injury, Redmond delayed seeking medical treatment for Ja.H. Redmond's assignment of error is not well-taken.

10.

## IV. Conclusion

{¶ 37} The judgment of the Wood County Court of Common Pleas is affirmed.

Pursuant to App.R. 24, Redmond is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.